332 S.E.2d 866

**STATE of West Virginia, ex rel. DEPARTMENT OF HUMAN SERVICES, by Caroline S. ADKINS**

**v.**

**Gene HUFFMAN.**

**No. CC947.**

Supreme Court of Appeals of West Virginia.

Submitted April 30, 1985.

Decided July 11, 1985.

Daniel F. Hedges, Charleston, for defendant.

Mary Beth Kershner, Asst. Atty. Gen., John T. Yeary, Dept. of Human Services, Office of Child Support Enforcement, Charleston, for plaintiff.

NEELY, Chief Justice:

Gene Huffman married Becky Huffman on 22 November 1972. This marital congress produced three children—children whom the State would support when Gene Huffman abandoned his family from 7 November 1981 until April of 1984. After the Huffman's reunited, the Department of Human Services tried to recoup $7,139 in Aid to Families with Dependent Children (AFDC) benefits that it had paid to Becky to support the children during Gene's absence. Today we decide what procedures

the West Virginia Department of Human Services may use to recoup AFDC benefits from a recalcitrant but perhaps indigent father. Although we find the Department of Human Services' goals well meaning, and their efforts sincere, we must limit the Department's debt collection procedures to those that comport with federal and state law.

The Department of Human Services brought a complaint against Gene Huffman in the Lincoln County Circuit Court in July of 1984. The complaint sought to recover $7,139 of AFDC benefits from Gene Huffman pursuant to *W. Va. Code* 48–7–3 [1983] and *W. Va. Code* 9–3–4 [1979]. After a hearing, the Circuit Court of Lincoln County held that in the absence of a court order fixing support or an administrative hearing fixing the amount of support that a responsible parent is able to pay, there is no basis for a judgment against such a parent for federal AFDC benefits paid by the state. Because of the novel question of law involved the circuit court certified the following question to this Court.

Whether the West Virginia Department of Human Services can legally obtain a judgment against a parent or other relative for reimbursement to the state for AFDC benefits paid absent a prior court order or administrative determination fixing an amount of support that the parent is able to pay?

The circuit court answered this question correctly when it held that the Department of Human Services has an obligation to comply with federal regulations, and that in the absence of a court order fixing support or an administrative hearing fixing the amount of support that a responsible relative is able to pay before imposition of liability, there is no basis for a judgment against the responsible relative for federal AFDC benefits paid.

## I

■ *W. Va. Code* 9–3–4 [1979][1] assigns the rights to support obligations of any

1. *W. Va. Code* 9–3–4 [1979] provides:

Any recipient of financial assistance under the program of state and federal assistance established by title IV of the federal Social Security Act of 1965, as amended, or any successor act thereto, shall, upon receipt of such assistance be deemed to have assigned to the West Virginia department of welfare all rights, title and interest such recipient may have to the receipt of support and maintenance moneys from any person responsible for the support and maintenance of any member of the benefit group. Persons responsible for support and maintenance shall include all persons who under the laws of the State of West Virginia owe obligations of support or maintenance to a child or to the caretaker of a child. The assignment contemplated herein shall include all amounts of support and maintenance which shall be accrued to the recipient of assistance and not received and all amounts of support and maintenance which shall accrue during recipient's period of eligibility: Provided, that, subject to applicable federal and state laws, the department of welfare shall be entitled to retain only so much of the support and maintenance as is necessary to reimburse the public assistance actually paid.

Each applicant for assistance subject to the assignment established herein shall (during the application process) be informed in writing of the nature of the assignment.

Any payment of federal and state assistance made to or for the benefit of any child or

children or the caretaker of a child or children creates a debt due and owing to the department of welfare by the person or persons who are responsible for the support and maintenance of such child, children or caretaker in an amount equal to the amount of assistance money paid: Provided, however, that the debt shall be limited by the amount established in any court order or final decree of divorce if the amount in such order or decree is less than the amount of assistance paid.

The assignment hereunder shall subrogate the department of welfare to the rights of the child, children or caretaker to the prosecution or maintenance of any action or procedure existing under law providing a remedy whereby the department of welfare may be reimbursed for moneys expended on behalf of the child, children or caretaker. The department of welfare shall further be subrogated to the debt created by any order or decree awarding support and maintenance to or for the benefit of any child, children or caretaker included within the assignment hereunder and shall be empowered to receive such money judgments and endorse any check, draft, note or other negotiable document in payment thereof.

The debt created under this section shall not be incurred by nor at any time be collected from a responsible person who is a recipient of federal and state assistance moneys for the benefit of any child for the period such person or persons remain in such state.

The assignment created hereunder shall be released upon closure of the assistance case and

recipient of financial assistance under the program of state and federal assistance established by Title IV of the Federal Social Security Act of 1965. Assigning one's right to support obligations is a prerequisite to receiving assistance under the AFDC program. Furthermore, *W.Va.Code* 9–3–4 [1979] provides that the Department of Human Services stands in the place of, and succeeds to all the legal rights and remedies of, a parent or guardian to maintain an action to enforce these rights. The pertinent part of *W.Va.Code* 9–3–4 [1979] reads as follows:

> The assignment hereunder shall subrogate the Department of Welfare to the rights of the child, children or caretaker to the prosecution or maintenance of any action or procedure under law providing a remedy whereby the Department of Welfare may be reimbursed for moneys expended on behalf of the child, children or caretaker. The department of welfare shall further be subrogated to the debt created by any order or decree awarding support and maintenance to or for the benefit of any child, children or caretaker included within the assignment hereunder and shall be empowered to receive such money judgments and endorse any check, draft, note or other negotiable document in payment thereof.

This allows the state to stand in the place and stead of the assignor and grants the state a broad right to enforce its claim. And as we have said before:

> "[t]he concept of subrogation is distinct from that of mere assignment. Subrogation is a 'creature of equity having for its purpose the working out of an equitable adjustment between the parties by securing the ultimate discharge of a debt by the person who in equity and good conscience ought to pay it.'" *quoting* 16 Couch, *Cyclopedia of Insurance Law*, 61: (18 2d Ed.1964), *Travelers Indemnity Company v. Rader*, 152 W.Va. 699, 704, 166 S.E.2d 157, 160 [1969].

*State ex rel. State Department of Welfare v. Smith*, 166 W.Va. 495, 275 S.E.2d 918, 920 (1981).

■ Obviously the Department of Human Services inherits all the rights of the original obligor, but the Department of Human Services does not obtain *any more* than those rights. Although in some cases those rights may be commensurate with the full amount of AFDC benefits paid out, this is not always the case. The actual amount of AFDC benefits paid to the assignor provides a ceiling and not a floor on state recoupment.

■ Mrs. Becky Huffman assigned her rights to support and maintenance from Gene Huffman. Accordingly, the Department of Human Services only inherits what original obligations Gene Huffman had to support and maintain his children. Although this obligation may be as large as the payments the Department of Human Services made to Mr. Huffman's wife and children during his absence, the obligation may be smaller if Mr. Huffman himself is indigent. His obligation is limited to the amount he could have paid in support and maintenance.

■ The Congress anticipated the difficulty and unfairness of collecting moneys from indigent parents when they designed the AFDC program. Congress requires that states that receive moneys for AFDC benefits must provide both a hearing [2] and

---

the termination of assistance payments except for such support and maintenance obligations accrued and owing at the time of closure which shall be necessary to reimburse the department for any balance of assistance payments made. The department of welfare may, at the election of the recipient, continue to receive support and maintenance moneys on behalf of the recipient following closure of the assistance case and shall distribute such moneys to the caretaker, child or children. The department of welfare shall notify in writing all appropriate persons of the terms of the release of assignment hereunder.

**2.** 45 C.F.R. § 302.50 [1984] provides:

The State plan shall provide as follows:
(a) The support rights assigned to the IV–D agency pursuant to § 232.11 of this title constitute an obligation owed to the State by the individual responsible for providing such support. Such obligation shall be established by:
(1) Order of a court of competent jurisdiction,

an extensive list of factors to consider before collecting money from the parent.[3] *W.Va.Code* 9–3–4 [1979] must be read in *pari materia* with these provisions. *W.Va.Code* 9–3–4 [1979] anticipates an analogous situation in its provision that limits a parent's debt by the amount established in any court order or final decree of divorce if the amount in such order or decree is less than the amount of assistance paid. In our present case, if the Huffmans had been divorced, Mr. Huffman's liability under *W.Va.Code* 9–3–4 [1979] would have been limited to the amount he would owe pursuant to *W.Va.Code* 48–2–16 [1984];[4] the Court would have considered a

(2) Other legal process as established by State laws, such as an administrative hearing process or legally enforceable and binding agreement; or, ...

(b) The amount of the obligation described in paragraph (a) of this section shall be:

(1) The amount specified in the order of a court of competent jurisdiction which covers the assigned support rights; or

(2) If there is no court order, an amount determined in writing by the IV–D agency as part of the legal process referred to in paragraph (a)(2) of this section in accordance with the formula which meets the criteria prescribed in section 302.53....

**3.** 45 C.F.R. § 302.53 [1984] provides a formula for determining the amount of obligation at either administrative hearing or court hearing. The regulation provides in pertinent part:

The State plan shall provide as follows:

(a) There shall be a formula to be utilized by the IV–D agency in determining the amount of support obligation pursuant to § 302.50 when there is no court order covering the obligation. Such formula must take into consideration the following criteria:

(1) All earnings, income and resources of the absent parent including real and personal property;

(2) The earnings potential of the absent parent;

(3) The reasonable necessities of the absent parent;

(4) The ability of the absent parent to borrow;

(5) The needs of the child for whom the support is sought;

(6) The amount of assistance which would be paid to the child under the full standard of need of the State's IV–A plan;

(7) The existence of other dependents; and,

(8) Other reasonable criteria which the State may choose to incorporate ...

(c) The formula described in paragraph (a) of this section shall be utilized to determine the required monthly support obligation, the amount of support obligation arrearage, if any, and the amount to be paid periodically against such arrearage.

**4.** *W.Va.Code* 48–2–16 [1984] provides in pertinent part:

(b) In cases where the parties to an action commenced under the provisions of this article have not executed a separation agreement, or have executed an agreement which is incomplete or insufficient to resolve the outstanding issues between the parties, or where the court finds the separation agreement of the parties not to be fair and reasonable or clear and unambiguous, the court shall proceed to resolve the issues outstanding between the parties. The court shall consider the following factors in determining the amount of alimony, child support or separate maintenance, if any, to be ordered under the provisions of sections thirteen and fifteen [§§ 48–2–13 and 48–2–15] of this article, as a supplement to or in lieu of the separation agreement:

(1) The length of time the parties were married;

(2) The period of time during the marriage when the parties actually lived together as husband and wife;

(3) The present employment income and other recurring earnings of each party from any source;

(4) The income-earning abilities of each of the parties, based upon such factors as educational background, training, employment skills, work experience, length of absence from the job market and custodial responsibilities for children;

(5) The distribution of marital property to be made under the terms of a separation agreement or by the court under the provisions of section thirty-two [§ 48–2–32] of this article, insofar as the distribution affects or will affect the earnings of the parties and their ability to pay or their need to receive alimony, child support or separate maintenance;

(6) The ages and the physical, mental and emotional condition of each party;

(7) The educational qualifications of each party;

(8) The likelihood that the party seeking alimony, child support or separate maintenance can substantially increase his or her income-earning abilities within a reasonable time by acquiring additional education or training;

(9) The anticipated expense of obtaining the education and training described in subdivision (8) above;

(10) The costs of educating minor children;

(11) The costs of providing health care for each of the parties and their minor children;

(12) The tax consequences to each party;

(13) The extent to which it would be inappropriate for a party, because said party will be the custodian of a minor child or children, to seek employment outside the home;

(14) The financial need of each party;

statutory laundry list of factors before fixing the amount of support and maintenance. Gene Huffman should not lose the benefit of this limitation simply because he did not bother to go through the legal formalities of divorce. The policies that cause us to consider the financial ability of the parties to a divorce are equally present in this case: An individual should not be required to pay more than he is able *Miller v. Miller*, 114 W.Va. 600, 602, 172 S.E. 893, 894 (1934).

■ Before the Department of Human Services can collect any amount from Gene Huffman it must first determine the limits of Gene Huffman's support obligation. Gene Huffman is entitled to a hearing to determine his ability to repay the AFDC benefits.

Certified Question Answered.

(15) The legal obligations of each party to support himself or herself and to support any other person; and

(16) Such other factors as the court deems necessary or appropriate to consider in order to arrive at a fair and equitable grant of alimony, child support or separate maintenance.