557 S.E.2d 761

STATE of West Virginia ex rel. WEST VIRGINIA DEPARTMENT OF HEALTH AND HUMAN RESOURCES, Bureau of Child Support Enforcement, on behalf of Debra L. Sinclair, Plaintiff Below, Appellee,

v.

Frankie L. SINCLAIR, Sr., Defendant Below, Appellant.

No. 29101.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 5, 2001.

Decided Nov. 8, 2001.

Dissenting Opinion of Justice Davis Nov. 14, 2001.

Debra L. Sinclair, pro se.

Charles A. Shaffer, Morgantown, West Virginia, Attorney for the Bureau of Child Support Enforcement.

David James Binegar, Star City, West Virginia, Attorney for petitioner.

ALBRIGHT, Justice:

 This is an appeal by Frankie L. Sinclair, Sr., (hereinafter "Appellant" or "obligor") from a July 21, 2000, order of the Circuit Court of Preston County granting a judgment against the Appellant in the amount of $7,624.51 to reimburse the State of West Virginia for Aid to Families with Dependent Children (hereinafter "AFDC")[1] benefits paid to the Appellant's wife, Debra Sinclair, on behalf of the couple's children. The Appellant contends that he was totally

disabled and without income during the period in which his wife, from whom he was separated, received AFDC benefits on behalf of their children. The Appellant further contends that the lower court erred in entering an order enforcing a judgment which was obtained in violation of federal regulations and in the absence of a hearing, as contemplated by *State ex rel. Department of Human Services by Adkins v. Huffman,* 175 W.Va. 401, 332 S.E.2d 866 (1985), and required by West Virginia law. Having thoroughly evaluated this matter, we reverse the order of the Circuit Court of Preston County and remand for further proceedings, including a *Huffman* hearing.

## I. Facts

The Appellant and Debra Sinclair were married in 1982. The marriage produced two children, Frankie L. Sinclair, Jr., born August 31, 1984, and Ryan Todd Sinclair, born January 8, 1988. The parties were separated in 1989, and Mrs. Sinclair applied for AFDC benefits. Pursuant to West Virginia Code § 9-3-4 (1979) (Repl.Vol.1998), Mrs. Sinclair assigned her right to bring suit against the Appellant for child support payments to the West Virginia Department of Health and Human Resources (hereinafter "DHHR").

On March 26, 1992, a complaint seeking to establish an amount of child support owed by the Appellant was filed by Mrs. Sinclair, through the DHHR.[2] The complaint requested that the Appellant be required to reimburse the DHHR, as Mrs. Sinclair's assignee, for support paid on behalf of the children. The complaint was served on the Appellant on April 8, 1992, and the Appellant failed to file an answer or otherwise appear. Mrs. Sinclair thereafter filed a Motion for Default Judgment, including a sworn statement by a representative of the DHHR indicating that

---

1. AFDC was an entitlement program that provided public assistance to needy families with dependent children. AFDC was financed in part by the federal government and was administered by the states. *See* Social Security Act, 42 U.S.C. §§ 601–617 (1994). State participation in the program is voluntary; however, once a state elects to participate, it is obligated to comply

with federal AFDC legislation. *King v. Smith,* 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968).

2. The Appellant is the obligor; Mrs. Sinclair is the obligee; and the DHHR is the assignee of the obligee.

the DHHR had expended $9,346.00 in AFDC benefits on behalf of the children.

On January 22, 1993, a family law master issued findings of fact and conclusions of law, finding that the Appellant's employment status was unknown and that the State was entitled to reimbursement of $9,346.00 for benefits paid on behalf of the children. The order did not contain discussion of the applicable federal or state AFDC reimbursement directives. The family law master also set child support at $249.00 per month. By order dated February 5, 1993, the lower court adopted the recommended decision of the family law master, granting the DHHR a judgment against the Appellant in the amount of $9,346.00 for reimbursement of AFDC benefits.

On April 16, 1998, Mrs. Sinclair filed a pro se complaint for divorce. The Appellant and Mrs. Sinclair appeared at a family law master hearing on November 19, 1998, and presented a Joint Parenting Plan. In December 9, 1998, findings of fact and conclusions of law, the family law master recommended that no child support be ordered in light of implementation of a Joint Parenting Plan. The family law master noted the prior judgment for $9,346.00 reimbursement of AFDC benefits and consolidated that 1993 civil action with the 1998 divorce case.

On January 24, 2000, the DHHR filed a motion for decretal judgment requesting enforcement of the 1993 AFDC reimbursement order. The Appellant filed a written response, contending that the 1993 order should not be enforced because a proceeding regarding his ability, as required by *Huffman*, had not been conducted. Moreover, the Appellant asserted that he was completely disabled and without income during the period in which the AFDC benefits were paid. On May 25, 2000, the family law master issued findings of fact and conclusions of law requiring the Appellant to pay $7,624.51[3] in reimbursement for AFDC benefits, based exclusively upon the 1993 judgment. The lower court adopted those findings and con-

clusions by order dated July 21, 2000, from which the Appellant now appeals.

## II. Established Precedent

■ Pursuant to West Virginia Code § 9–3–4, a recipient of financial support through AFDC assigns his or her right to support obligations to the DHHR. Through such assignment, the DHHR "stands in the place of, and succeeds to all the legal rights and remedies of, a parent or guardian to maintain an action to enforce these rights." *Huffman*, 175 W.Va. at 404, 332 S.E.2d at 869. In *Huffman*, there had been no original court order establishing a monthly child support payment, and the DHHR had not conducted a hearing to determine the appropriate amount of reimbursement. This Court explained as follows in *Huffman:*

> Obviously the Department of Human Services inherits all the rights of the original obligor, but the Department of Human Services does not obtain *any more* than those rights. Although in some cases those rights may be commensurate with the full amount of AFDC benefits paid out, this is not always the case. The actual amount of AFDC benefits paid to the assignor provides a ceiling and not a floor on state recoupment.

*Id.* at 404, 332 S.E.2d at 870. In syllabus point two of *Huffman*, this Court explained:

> The Department of Human Services receives only those rights to recoupment of benefits paid under the Aid to Families with Dependent Children Program (AFDC) that an AFDC recipient could assign: the recipient's right to support and maintenance. That right to support and maintenance is dependent upon the ability of the responsible relative to pay, and the determination of ability to pay must be made through an administrative hearing or court proceeding.

*Id.* at 402, 332 S.E.2d at 868.

In *Huffman*, this Court recognized that it was bound by federal regulations which establish mandatory procedures for the determination of the amount of reimbursement to

---

**3.** The original $9,346.00 was reduced to $7,624.51 after seizure of the Appellant's federal income tax refund.

which the DHHR would be entitled, and the Court explained that the regulations provide "an extensive list of factors to consider before collecting money from the parent." 175 W.Va. at 405, 332 S.E.2d at 870–71. The applicable federal regulation, 45 C.F.R. 302.50 (1984), provides that if there is no preexisting court order regarding child support, the amount of reimbursement to which the State would be entitled is to be determined through utilization of a formula which meets the criteria set forth in the federal regulations. At the time *Huffman* was decided, those determinative factors were set forth in 45 C.F.R. 302.53. That section has been altered and is located at 45 C.F.R. 302.56.[4]

In *Huffman*, this Court explained that West Virginia Code § 9-3-4 "anticipates an analogous situation in its provision that limits a parent's debt by the amount established in any court order or final decree of divorce if the amount in such order or decree is less than the amount of assistance paid." 175 W.Va. at 405, 332 S.E.2d at 871. This Court noted that had Mr. and Mrs. Huffman been divorced, Mr. Huffman's liability would have been determined by application of a "statutory laundry list of factors before fixing the amount of support and maintenance." *Id.* at 406, 332 S.E.2d at 871. The Court explicitly stated that "[a]n individual should not be required to pay more than he is able." *Id.* at 406, 332 S.E.2d at 871. This Court concluded that prior to the DHHR collection of reimbursement, Mr. Huffman was "entitled to a hearing to determine his ability to repay the AFDC benefits." *Id.* at 406, 332 S.E.2d at 871.

■ This Court reiterated the essential nature of a *Huffman* hearing in *Fenton v. Miller,* 182 W.Va. 731, 391 S.E.2d 744 (1990), and addressed the issue of the appropriate forum for conducting such a hearing. The Court explained as follows in *Fenton:*

[T]he opportunity for the Child Advocate to take the debtor's ability to pay into account occurs at the informal stage of the proceedings, when the defaulting debtor is invited into the Child Advocate office to explain his circumstances and work out an agreement. If the defaulting parent presents to the Child Advocate credible evidence of inability to pay any of the amount owed, that's where the matter should come to rest. However, if the Child Advocate finds the debtor uncooperative or has reason to believe that the information supplied by the debtor or the debtor's employer is not accurate, then the Child Advocate is entitled to file an action to collect the entire amount of the AFDC payments made. In this event, determination of whether the defaulting parent is able to pay is in the hands of the circuit court or the family law master, after notice and a full hearing.

182 W.Va. at 734, 391 S.E.2d at 747. The *Fenton* Court also cautioned that "[l]ike any other lawyer with settlement authority, the Child Advocate need not go through the motions of attempting to squeeze blood from a stone when the ultimate result is not in doubt." *Id.* at 735, 391 S.E.2d at 748. The Court concluded as follows in syllabus point one of *Fenton:* "The formal hearing that this court has required in *State ex rel. Department of Human Services v. Huffman,* 175 W.Va. 401, 332 S.E.2d 866 (1985), is placed by statute in the West Virginia circuit courts

---

4. The alteration in the regulation does not diminish the *Huffman* decision and does not alter the requirement that earnings and income of the absent parent be taken into consideration. The federal regulation, 45 C.F.R. 302.53, was removed by Congress and replaced with 45 C.F.R. 302.56, providing in pertinent part as follows:

(a) Effective October 13, 1989, as a condition of approval of its State plan, the State shall establish one set of guidelines by law or by judicial or administrative action for setting and modifying child support award amounts within the state.

(b) The State shall have procedures for making the guidelines available to all persons in the State whose duty it is to set child support award amounts.

(c) The guidelines established under paragraph (a) of this section must at a minimum
(1) Take into consideration all earnings and income of the absent parent:
(2) Be based on specific descriptive and numeric criteria and result in a computation of the support obligation; and
(3) Provide for the child(ren)'s health care needs, through health insurance coverage or other means.

and the family law masters, at such time as a Child Advocate seeks a judgment for back support." 182 W.Va. at 732, 391 S.E.2d at 745.

In *Jackson v. Rapps,* 947 F.2d 332 (8th Cir.1991), *cert. denied* 503 U.S. 960, 112 S.Ct. 1561, 118 L.Ed.2d 208 (1992), several noncustodial parents brought a class action claiming that 45 C.F.R. § 302.53, now 45 C.F.R. § 302.56, required the State of Missouri, in seeking reimbursement of AFDC benefits, to consider the factors set forth in the federal regulation. 947 F.2d at 337. The parents also alleged that the State's failure to consider those factors constituted a violation of both the Supremacy Clause and the parents' due process rights. *Id.* at 335. The parents had been administratively ordered to pay the entire amount of AFDC support. The Eighth Circuit concluded that a noncustodial parent could not be administratively required to pay the entire amount due unless the calculations were properly founded upon factors set forth in the federal regulations, reasoning that "the supremacy clause prevents the implementation of a reimbursement policy other than one in accordance with existing federal regulations. Our decision makes it unnecessary to reach the due process issue." 947 F.2d at 337.

### III. Discussion

▇ In the case *sub judice,* the 1993 default judgment was utilized as the basis for the DHHR's motion for decretal judgment, filed on January 24, 2000. It is undisputed that the 1993 judgment was not properly founded upon facts gleaned from a *Huffman* hearing; nor was a *Huffman* hearing conducted when the more recent judgment was rendered on July 21, 2000. While the State could conceivably contend [5] that it lacked sufficient information concerning the Appellant's ability to pay in 1993 due to the Appellant's failure to respond, no such argument could be advanced with regard to the proceedings in 2000, in which the Appellant was a participant and attempted to make his financial circumstances understood.

▇ This Court concludes that where a recipient of AFDC benefits has, in return for such benefits, assigned to the DHHR support rights owed the recipient by a support obligor, and the DHHR seeks reimbursement for such benefits from the support obligor, such obligor is entitled, upon request, to a *Huffman* hearing to determine the obligor's ability to pay reimbursement under federally mandated guidelines, unless the amount of such reimbursement was fixed by a prior court order or by agreement between the DHHR and the obligor. A default judgment [6] for the entire amount of the AFDC benefits, in which the ability of the obligor to pay the total amount of benefits was not determined, does not operate to fix the amount of reimbursement due the DHHR from such obligor. As this Court in *Huffman* made abundantly clear, the determination of the obligor's ability to pay, i.e., income and income-earning potential, must be made at some point in the proceedings to determine the appropriate level of reimbursement of AFDC benefits. To permit enforcement of a reimbursement order for the full amount of AFDC benefits, without a determination as envisioned by the federal regulations and specifically by this Court in *Huffman,* would be manifestly unfair and tantamount to granting the DHHR, as assignee of the custodial parent, more money in reimbursement than that to which the custodial parent would have been entitled. Such result would be patently absurd and would ignore the legal principles underlying the recognition that "[e]quity historically has placed substance above form and insists that the rules of law not become instruments of oppression."

5. This Court is limited in its ability to assess the DHHR's position since the DHHR failed to file a brief in this appeal and no oral argument was presented. Our conclusion regarding the necessity for a remand for a *Huffman* hearing, however, would not have been altered by the filing of a DHHR brief since it is undisputed that a *Huffman* hearing was not held.

6. The Appellant did not challenge, in this appeal or elsewhere, the recovery of child support payments from other sources utilizing the 1993 default judgment. Upon conducting a *Huffman* type hearing, taking into account all sources of income, the Appellant is entitled to credit for the amounts recovered. Given his failure to sooner raise the issue of his inability to pay, the Appellant is not entitled to any refund of those amounts.

*Gerder Services, Inc. v. Johnson,* 109 Misc.2d 216, 439 N.Y.S.2d 794, 796 (N.Y.1981).

This Court's conclusion is particularly compelled where, as in the present case, there is an allegation that the DHHR had knowledge of the parent's lack of income-earning potential during the time in which the AFDC benefits were paid. Again, based upon the absence of a DHHR brief, this Court cannot confirm that the DHHR presently concedes this point.

We remand this matter to the lower court with directions to conduct a *Huffman* hearing for the purpose of determining the Appellant's ability to pay. As the *Huffman* Court explained, "[b]efore the [DHHR] can collect any amount from [the obligor] it must first determine the limits of [the obligor's] support obligation. [The obligor] is entitled to a hearing to determine his ability to repay the AFDC benefits." 175 W.Va. at 406, 332 S.E.2d at 871.

Reversed and Remanded With Directions.

DAVIS, Justice, dissenting:

(Filed Nov. 14, 2001)

Mr. Frankie L. Sinclair, Sr., appealed an order of the Circuit Court of Preston County which granted a decretal judgment for child support arrearages owed by him. The judgment was entered in favor of the Bureau for Child Support Enforcement (hereinafter referred to as "BCSE") on behalf of Debra L. Sinclair. Here, Mr. Sinclair attacks the validity of the underlying default judgment that gave rise to the arrearages. Mr. Sinclair argues that he did not have a hearing pursuant to *State ex rel. Department of Human Services by Adkins v. Huffman,* 175 W.Va. 401, 332 S.E.2d 866 (1985). The majority opinion agrees that Mr. Sinclair was entitled to a *Huffman* hearing prior to the underlying default judgment. Unfortunately, the position taken by the majority opinion has made it virtually impossible for BCSE to ever recover monies spent under the Aid to Families with Dependent Children (hereinafter referred to as "AFDC") program. For reasons more fully set forth below, I dissent from the majority's decision in this case.

## I.

### FACTUAL AND PROCEDURAL HISTORY

Although the majority opinion has established some of the relevant facts in this case, I feel it necessary to restate those facts, in addition to other relevant facts that were selectively excluded from the majority opinion.

Mr. Sinclair and Mrs. Sinclair were married on October 9, 1982. On July 25, 1989, Mrs. Sinclair separated from Mr. Sinclair. At that time, the couple had two children. After the separation, Mrs. Sinclair applied for and was given AFDC benefits under W.Va.Code § 9–4–1, *et seq.*

In 1992, a complaint was filed by Mrs. Sinclair and BCSE against Mr. Sinclair, in order to establish child support and to recover AFDC benefits paid on behalf of the children by BCSE. *Mr. Sinclair was served a copy of the complaint on April 8, 1992, by the Sheriff of Preston County, but he failed to file an answer to the complaint.* Mrs. Sinclair filed a motion for default judgment seeking $9,346.00 in AFDC benefits that were expended by BCSE on behalf of the parties' children. The family law master issued a recommended decision on January 22, 1993, that required Mr. Sinclair to reimburse BCSE $9,346.00 and to pay child support in the amount of $249.00 per month. *Notice of the recommended decision was given to Mr. Sinclair on the date it was issued. However, Mr. Sinclair did not file a petition for review of the recommended decision.* On February 5, 1993, the circuit court entered an order adopting the family law master's recommended decision.[1] *Mr. Sinclair did not appeal the final order.*

Thereafter, Mrs. Sinclair filed a complaint for divorce on April 16, 1998, based upon irreconcilable differences. *Mr. Sinclair filed an answer to the complaint admitting irreconcilable differences.* On December 9, 1998, the circuit court, adopting the family law

---

1. On May 17, 1993, wage withholding was initiated against Mr. Sinclair for payment of current child support and reimbursement of prior AFDC benefits.

master's recommended decision, entered an order granting the couple a divorce.

BCSE filed a motion on January 24, 2000, seeking a decretal judgment for arrearages based upon the default judgment entered against Mr. Sinclair on February 5, 1993. Mr. Sinclair filed a response to the motion, which challenged the validity of the default judgment. The family law master then issued a recommended decision finding that Mr. Sinclair was in arrears in the amount of $7,624.51. Mr. Sinclair filed a petition for review of the recommended decision, and, on July 21, 2000, the circuit court issued an opinion letter adopting the recommendation of the family law master. It is from the opinion letter that Mr. Sinclair now appeals.

## II.

## DISCUSSION

*A. Mr. Sinclair waived his right to a Huffman hearing.* Mr. Sinclair sought to challenge the validity of the default judgment order entered on February 5, 1993, obligating him to pay child support and reimburse BCSE for AFDC benefits.[2] The circuit court, however, determined that Mr. Sinclair provided no basis for mounting such a challenge:

> The defendant's Petition for Review does not allege any mistake, inadvertence, surprise, excusable neglect or unavoidable cause, fraud, misrepresentation or other misconduct. Rather the defendant alleges that in 1993 "the defendant did not care what happened to him." The principles set forth in [*State ex rel. Department of Human Services by Adkins v. Huffman,* 175 W.Va. 401, 332 S.E.2d 866 (1985),] and [*Fenton v. Miller,* 182 W.Va. 731, 391 S.E.2d 744 (1990),] were applicable in 1993 and the defendant was entitled to an opportunity to a full hearing on his ability to repay the AFDC benefits. He was given that opportunity but chose not to appear

or otherwise contest the issue of AFDC repayment. Further, he was given notice of the hearing and Recommended Order ordering him to repay $9,346.00 in AFDC benefits but chose not to appear or contest wage withholding. When withholding was initiated against his employer Devione Industries he again chose not to appear. Nearly seven years have gone by.

In spite of this ruling, the majority opinion completely ignored the circuit court's finding that Mr. Sinclair was given an opportunity to have a *Huffman* hearing in 1993, and that he failed to answer and appear for such hearing. In addition to failing to file a petition for review prior to the entry of the February 5, 1993, order, Mr. Sinclair also did not appeal that order to this Court. Thus, the arguments raised by Mr. Sinclair in the instant appeal contending that the circuit court failed to comply with *Huffman* should have been raised in an appeal from the February 5, 1993 order.[3] Having failed to do so earlier, Mr. Sinclair is now procedurally barred from asserting these grounds in his present appeal.

Under the majority opinion in this case, though, Mr. Sinclair has been allowed to arrogantly refuse to answer a complaint that would have given him a *Huffman* hearing. The majority opinion additionally has permitted Mr. Sinclair to blatantly refuse to file a timely appeal regarding the purported denial of a *Huffman* hearing. Lastly, the majority opinion has enabled Mr. Sinclair to pompously decide when he would prefer to raise the issue of a *Huffman* hearing, rather than requiring him to comply with the established law on this point. Then, in this case, Mr. Sinclair chose and the majority opinion approved, a procedural delay of nearly seven years.

*B. Mr. Sinclair did not assert grounds for relief pursuant to Rule 60(b) of the West Virginia Rules of Civil Procedure.* The circuit court determined that Mr. Sin-

---

2. This Court recognized in the single Syllabus of *State ex rel. State Department of Welfare v. Smith,* 166 W.Va. 495, 275 S.E.2d 918 (1981), that "[t]he [Bureau of Child Support Enforcement] has standing to enforce support obligations assigned to the State pursuant to W.Va.Code § 9–3–4 [1979]."

3. This statement should not be construed to suggest that such an appeal necessarily would have been favorable to Mr. Sinclair.

clair did not assert any conditions under Rule 60(b) of the West Virginia Rules of Civil Procedure[4] which might have permitted him to challenge the court's final order of February 5, 1993.[5] Ruling on Mr. Sinclair's request for relief, the circuit court found that the only reason given by him for not answering the complaint, which resulted in the default judgment, was that he *"did not care what happened to him."* This excuse does not satisfy even the liberal provision of Rule 60(b)(6), which allows a judgment to be set aside for "any other reason justifying relief from the operation of the judgment." We have previously recognized that "in general, the law ministers to the vigilant, not to those who sleep on their rights." *State v. LaRock,* 196 W.Va. 294, 316, 470 S.E.2d 613, 635 (1996). Mr. Sinclair chose to sleep on his rights for nearly seven years. To grant the type of relief Mr. Sinclair seeks places our child support enforcement laws in utter chaos. The majority decision in this case has set a precedent whereby a child support obligor may simply refuse to take part in AFDC-type reimbursement proceedings. Then, years later, the child support obligor may, pursuant to the majority's opinion herein, seek to set aside a default judgment by claiming a right to a *Huffman* hearing. By acquiescing to Mr. Sinclair's demands, the majority opinion has disregarded every legal principle of fairness and due process. "In my opinion this liberality in granting relief from default judgments renders it an act of futility to obtain a default judgment[.]" *McDaniel v. Romano,* 155 W.Va. 875, 882,

190 S.E.2d 8, 13 (1972) (Carrigan, J., dissenting). I simply cannot accept such a legal concept.

For the foregoing reasons, I respectfully dissent. I am authorized to state that Justice MAYNARD joins in this dissenting opinion.

---

4. Rule 60(b), provides in relevant part:

On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) Mistake, inadvertence, surprise, excusable neglect, or unavoidable cause; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.

The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken.

5. In fact, Mr. Sinclair could not have properly sought relief under Rule 60(b)(1), (2) or (3) because those provisions must be invoked within one year of a final judgment.

Moreover, the record in this case did not indicate whether Mr. Sinclair sought to invoke W.Va. R.Civ.P. 55(c), which provides that "[f]or good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set aside in accordance with Rule 60(b)." However, because Rule 55(c) references Rule 60(b), Mr. Sinclair would still have been foreclosed in his attack on the February 5, 1993, order.