566 S.E.2d 288

## In re DESTINY G.A.

### No. 30315.

Supreme Court of Appeals of
West Virginia.

Submitted June 4, 2002.

Decided June 19, 2002.

---

Kevin Ray Morehead, Mineral Wells, Pro Se.

Kimberly D. Bentley, Esq., Assistant General Counsel, Charleston, for WVDHHR, Bureau for Child Support Enforcement.

PER CURIAM.

This case is before this Court upon appeal of a final order of the Circuit Court of Wood County entered on June 11, 2001. In that order, the circuit court adjudged the appellant, Kevin Ray Morehead, as the father of Destiny G.A.[1] and ordered him to pay child support in the amount of $188.00 per month. The circuit court also granted decretal judgments to the appellee, the West Virginia Department of Health and Human Resources, Bureau for Child Support Enforcement (hereinafter "the Bureau") against the appellant for the costs of the paternity testing and for reimbursement of public assistance and medical benefits provided for the child.

In this appeal, the appellant contends that his financial ability to pay was not considered by the court when it ordered him to pay child support and granted the decretal judgments against him. The appellant also seeks joint custody of Destiny G.A. This Court has before it the petition for appeal, the briefs of counsel,[2] and the designated record. For the reasons set forth below, the final order is reversed, and this case is remanded for further proceedings.

## I. FACTS

Destiny G.A. was born on July 12, 2000. On October 3, 2000, the Bureau commenced this action to establish the paternity of Destiny G.A., along with child support and reimbursement support for costs associated with the child's birth. The appellant answered the complaint on October 19, 2000, and denied all allegations set forth therein. On November 22, 2000, at a hearing where the appellant failed to appear, the family law master ordered a paternity test. Thereafter, the parties participated in paternity testing which determined that the appellant could not be excluded as the father of Destiny G.A.

Another hearing was held on March 28, 2001. Again, the appellant failed to appear even though notice was sent to him at the address listed on his answer to the complaint. At the hearing, the Bureau requested establishment of paternity based on the paternity test results. The Bureau also sought establishment of current child support as well as reimbursement for the paternity testing and the Temporary Assistance to Needy Families ("TANF") benefits and medical/birthing benefits provided on behalf of the child. Because the appellant did not appear at the hearing, the family law master granted the Bureau default judgment.

For purposes of the child support calculation, the family law master attributed minimum wage income to the appellant, and determined that he should pay child support in the amount of $188.00 per month commencing on April 1, 2001. The family law master also determined that the appellant should pay the cost of the paternity testing which was $261.00. He further found that the appellant should reimburse the State for the TANF benefits provided to the child from September 6, 2000 to March 31, 2001 which totaled $1,333.00 and for the medical and birthing benefits provided for the child from January 3, 2000 to October 4, 2000 which totaled $8,302.71. The family law master's findings and conclusions were set forth in a recommended decision dated May 2, 2001.

On May 4, 2001, the appellant filed a petition for review with the circuit court. However, the circuit court affirmed the findings of fact and conclusions of law set forth in the family law master's recommended decision. The final order was entered on June 11, 2001, and this appeal followed.

## II. STANDARD OF REVIEW

■ As noted above, the appellant is appealing a final order of the circuit court

---

1. In accordance with our past practice in juvenile and domestic relations cases involving sensitive facts, we do not use the full names of children. *See In the Matter of Jonathan P.,* 182 W.Va. 302, 303 n. 1, 387 S.E.2d 537, 538 n. 1 (1989).

2. The appellant filed this appeal pro se.

which adopted findings made by a family law master.[3] This Court has held that,

> In reviewing challenges to findings made by a family law master that also were adopted by a circuit court, a three-pronged standard of review is applied. Under these circumstances, a final equitable distribution order is reviewed under an abuse of discretion standard; the underlying factual findings are reviewed under a clearly erroneous standard; and questions of law and statutory interpretations are subject to a *de novo* review.

Syllabus Point 1, *Burnside v. Burnside*, 194 W.Va. 263, 460 S.E.2d 264 (1995). With these standards in mind, we now address the issues in this case.

## III. DISCUSSION

The appellant contends that the court failed to determine his ability to pay when it ordered him to provide child support and reimbursement for the costs of the paternity testing and benefits paid on behalf of Destiny G.A. The appellant states that he has been unemployed since April 1998, when the company where he worked underwent a change of ownership. He says that he has since been the primary caretaker of his two children from his marriage, both of whom have attention deficit hyperactivity disorder. According to the appellant, he has stayed home with the children and has provided day to day care of the children so that his wife can complete her education and thus, is unable to pay the judgments rendered against him.

The Bureau concedes that the court erred by granting it a judgment for reimbursement of the TANF benefits paid on behalf of the child without considering the appellant's ability to pay pursuant to our decision in *State ex rel. West Virginia Dept. of Health and Human Resources, Bureau of Child Support Enforcement v. Sinclair*, 210 W.Va. 354, 557 S.E.2d 761 (2001). In Syllabus Point 3 of *Sinclair*, we held that:

> Where a recipient of Aid to Families with Dependent Children benefits has, in return for such benefits, assigned to the Department of Health and Human Resources support rights owed the recipient by a support obligor, and the Department of Health and Human Resources seeks reimbursement for such benefits from the support obligor, such obligor is entitled, upon request, to a hearing as envisioned by this Court in *State ex rel. Dept. of Human Services by Adkins v. Huffman*, 175 W.Va. 401, 332 S.E.2d 866 (1985), to determine the obligor's ability to pay reimbursement under federally mandated guidelines, unless the amount of such reimbursement was fixed by a prior court order or by agreement between the Department of Health and Human Resources and the obligor. A default judgment for the entire amount of the Aid to Families with Dependent Children benefits, in which the ability of the obligor to pay the total amount of benefits was not determined, does not operate to fix the amount of reimbursement due to the Department of Health and Human Resources from such obligor.

Thus, in accordance with our decision in *Sinclair*, the final order of the circuit court is reversed, and this case is remanded for a hearing to determine the appellant's ability to reimburse the Bureau for the TANF benefits provided for Destiny G.A.

Upon remand, the appellant's ability to reimburse the Bureau for the medical and birthing benefits paid on behalf of Destiny G.A. should also be considered. We recently held in Syllabus Point 3 of *State ex rel. Dept. of Health and Human Resources, Bureau for Child Support Enforcement v. Carpenter*, 211 W.Va. 176, 564 S.E.2d 173 (2002) that:

> The right of the Department of Health and Human Resources, Bureau for Child Support Enforcement to request the biological father of a child born out of wedlock to make reimbursement for birth and medical expenses, is dependent upon the biological father's ability to pay such costs on the date the mother was granted birth and medical benefits. The determination of

---

**3.** During the pendency of this appeal, the Legislature abolished the judicial office of family law master and replaced it with the judicial office of family court judge. *See* W.Va.Code § 51–2A–1 *et seq.*

the biological father's ability to pay must be made through administrative action or a court proceeding.

■ In addition, the appellant's ability to pay the costs of the paternity testing should be considered. With respect to the costs incurred by the State for paternity testing, W.Va.Code § 48A–6–3 (2000)[4] provides, in pertinent part:

(c) Except as provided in subsection (d) of this section, when a blood test is ordered pursuant to this section, the moving party shall initially bear all costs associated with the blood test unless that party is determined by the court to be financially unable to pay those costs. This determination shall be made following the filing of an affidavit pursuant to section one [§ 59–2–1], article two, chapter fifty-nine of this code. When the court finds that the moving party is unable to bear that cost, the cost shall be borne by the state of West Virginia. Following the finding that a person is the father based on the results of a blood test ordered pursuant to this section, the court shall order that the father be ordered to reimburse the moving party for the costs of the blood tests unless the court determines, based upon the factors set forth in this section, that the father is financially unable to pay those costs.

(d) When a blood test is ordered by the child support enforcement division, the division shall initially bear all costs subject to recoupment from the alleged father if paternity is established.

While the statute clearly provides that the Bureau may recoup the costs of the paternity testing from the father, nevertheless, his financial ability to pay those costs must be considered. Again, despite the appellant's protest to the family law master's recommendation, the court never considered his ability to pay. Therefore, this issue should also be considered upon remand.

■ We further determine that the court should reconsider the order of child support in the amount of $188.00.[5] As noted above, the family law master attributed minimum wage income to the appellant. We have held that:

A family law master or circuit court may attribute income to a parent when there is evidence that the parent has, without a justifiable reason, voluntarily acted to reduce his or her income. In such circumstances, a family law master or circuit court should attribute income based upon the parent's past earning history or earning capacity. However, if the parent's past earning history or capacity cannot be determined, then the family law master or circuit court may, at a minimum, attribute income at the federal minimum wage level.

Syllabus Point 4, *State ex rel. West Virginia Dept. of Health and Human Resources, Bureau for Child Support Enforcement v. Gibson*, 207 W.Va. 594, 535 S.E.2d 193 (2000). Nonetheless, we have also held that:

A family law master or circuit court may not attribute income to a parent who is unemployed or under-employed because the parent has chosen to devote time to care for children (including those who are above pre-school age or those to whom the parties do not owe a joint legal responsibility for support) under circumstances in which a reasonable, similarly-situated parent would have devoted time to care for the children had the family remained intact or, in cases involving a non-marital birth, had a household been formed.

Syllabus Point 6, *Gibson*. Furthermore, we have stated that:

When a family law master or a circuit court, in the exercise of discretion, chooses to attribute income to a parent who is providing care to children, there must be a full explanation on the record why it is in the best interests of the children that the parent be employed rather than providing care to the children.

Syllabus Point 7, *Gibson*.

■ In the *Gibson* case, hereinabove cited, the "parent" happened to be the mother

---

**4.** This statute was amended and reenacted in 2001 as W.Va.Code § 48–24–103. However, the provisions at issue here were not changed.

**5.** This Court acknowledges that the appellant's child support obligation was reduced to $50.00 per month commencing on October 1, 2001, by order of the Circuit Court of Wood County entered on December 18, 2001.

of the children. In the case now before us, the "parent" happens to be the father. The principles enunciated in *Gibson* are not gender specific and, accordingly, the *Gibson* rule must be applied in a gender neutral fashion. Simply put, the gender of the parent who elects to stay home and provide day to day child care is irrelevant in the analysis of any set of facts based on the *Gibson* case.

As discussed above, the appellant has indicated that he is not currently employed because he is taking care of his children, who both have medical problems, while their mother, a full-time college student, is completing her education. Accordingly, upon remand the circuit court should hold a hearing, pursuant to our holdings in *Gibson*, to ascertain "whether a reasonable, similarly situated parent would have devoted time to care for the children," and accordingly to determine whether or not the action of the appellant in the particular circumstances of this case meets the *Gibson* reasonableness standard.

Finally, as discussed above, the appellant had requested joint custody of Destiny G.A. The final order in this case designates the mother of Destiny G.A. as the residential and custodial parent, but makes no findings as to why the appellant has not been allocated any custodial responsibility. Accordingly, this case is also remanded for findings in that regard and/or allocation of custodial responsibility in accordance with W.Va.Code § 48–9–101 *et seq.*

## IV. CONCLUSION

Accordingly, for the reasons set forth above, the final order of the Circuit Court of Wood County entered on June 11, 2001, is reversed, and this case remanded for further proceedings consistent with this opinion.

Reversed and Remanded.