OPINION OF THE COURT
Bellacosa, J.
The Washington County Department of Social Services commenced this proceeding against a third-party responsible person, pursuant to article 4 of the Family Court Act. It seeks recovery of its statutory subrogation reimbursement based on a Medicaid payment for medical services provided to another individual. The issue is whether, under Social Services Law § 367-a (2) (b), Geiser, a responsible "third party,” must reimburse the Department of Social Services the full amount paid by the Department to the medical providers, including such statutory Medicaid subsidies characterized as bad debt and charity surcharges (see, Public Health Law § 2807-c [14]). We hold that the municipality’s subrogation reimbursement rights do not entitle it to the portion of costs unrelated to and over- and-above the actual costs of the medical services provided. Thus, the order of the Appellate Division granting the County’s application for in toto reimbursement should be reversed.
I.
Medicaid is a jointly funded Federal and State medical assistance program, established by title XIX of the Social Security Act. It pays for necessary medical care for qualifying indigent individuals, whose income and resources are insufficient to meet the costs of their medical care (42 USC § 1396 et seq.; Social Services Law § 363 et seq.). Because New York has adopted a comprehensive statutory scheme controlling in-patient hospitalizations, providers of medical services to Medicaid beneficiaries are paid with public funds on a fixed schedule of rates based upon the diagnosis related group (DRG) in which the patient falls (see, Public Health Law § 2807-c [1] [a][b]). The DRG rate is set by the State Department of Health and is based upon the cost of treating an average patient with *106 a particular primary diagnosis. Pursuant to Public Health Law § 2807-c, payments made to a health care provider by the municipality include an allowance, over the actual cost of the particular services rendered, for statutory surcharges. Thus, under New York’s rate system, the actual cost of treating a particular patient may be more or less than the DRG grouping.
Medicaid programs are administered jointly through Federal-State partnerships between the Department of Health and Human Services and the designated State agency. In New York, the designated State agency responsible for the administration of Medicaid is the New York State Department of Social Services. Participating States are mandated to establish a State Medicaid program in accordance with Federal statutory and regulatory requirements. To that end, States are required, among other things, to adopt procedures to prevent fraud, abuse, unnecessary or inappropriate use of Medicaid services and excess payments (42 CFR 455.1, 456.3, 456.23).
Each participating State must also develop its own Medicaid plan and establish a payment rates-and-methods schedule (42 USC § 1396a). The State must particularly "take all reasonable measures to ascertain the legal liability of third parties * * * to pay for care and services available under the plan” (42 USC § 1396a [a] [25] [A]) and must seek reimbursement from such third parties (42 USC § 1396a [a] [25] [B]). This requirement furthers the ultimate goal of Medicaid — that the program "be the payer of last resort” (Sen Rep No. 146, 99th Cong, 2d Sess, 312, reprinted in 1986 US Code Cong & Admin News 279; Matter of Steuben County Dept. of Social Serve, v Beats, 76 NY2d 451, 455). Thus, other available resources must be used or recouped.
Pursuant to these congressional mandates, New York enacted Social Services Law § 367-a, which entitles the State, through the Department of Social Services and local municipality payors, to invoke subrogation rights against third parties for paid Medicaid benefits. Furthermore, in order to comply with the Medicaid assignment-of-rights requirement, Social Services Law § 366 (4) (h) (1) provides: "an applicant for or a recipient of assistance under this title shall be required, as a condition of initial or continued eligibility for such assistance, to assign * * * any benefits which are available to him or her individually from any third party.”
*107 II.
Respondent Stark gave birth to a daughter on March 13, 1990, at Moses Ludington Hospital in Ticonderoga, New York. The unwed mother and father were both unemployed and had no source of income or health insurance benefits. Accordingly, the mother applied for and ultimately was allowed Medicaid benefits. Following the birth of the child, the Washington County Department of Social Services paid the total confinement and delivery expenses arising from the childbirth, which according to the Department totaled $4,244.08 under the Medicaid rate payment formula: $3,181.30 attributable to the mother and $1,062.78 attributable to the child.
Shortly after the birth of his daughter, respondent Geiser obtained employment. The Commissioner of the Washington County Department of Social Services then commenced this proceeding, pursuant to article 4 of the Family Court Act, to recover from the father the confinement and delivery expenses associated with the care rendered to the mother and newborn. Geiser answered by challenging the reasonableness of the medical bill sought to be captured through reimbursement. Specifically, upon his own investigation, he learned that the actual hospital charges relating to care rendered to the mother and child totaled $802.07.
Pursuant to the parties’ stipulated facts, the matter was submitted to a Family Court Hearing Examiner, who concluded that the father should reimburse the Department for the full amount paid by the Department. Notwithstanding the fact that the Department failed to itemize the expenses, Family Court granted the Department’s petition, found the father liable for medical expenses attributable to the respondent Stark totaling $3,181.30, reserved decision on claimed additional expenses, and ordered that he repay the Department at a rate of $10 per week. In accordance with our decision in Matter of Steuben County Dept of Social Servs. v Deats (76 NY2d 451, supra), the father was found not liable for costs associated with care of the child. Family Court subsequently amended its order to include the cost of the attending physicians, increasing to $4,218.30 the amount owed by the father. The Appellate Division affirmed, finding that the State, pursuant to 42 USC § 1396a (a) (25) (B), was required to seek reimbursement for the entire Medicaid expenditure (198 AD2d 709, 710). This Court granted leave to appeal. We now reverse.
*108 III.
In Matter of Steuben County Dept. of Social. Servs. v Deats (id.), the Court confirmed "third party” liability under the Family Court Act and Federal Medicaid statutes and regulations (see, 42 USC § 1396a [a] [25]; 42 CFR 433.136). We held that governing Federal law did not expressly declare a father —whether or not wed to the mother — to be a responsible "third party.” In New York, however, under Family Court Act §§ 514 and 545, the unwed father would be liable as a third party for the mother’s pregnancy and childbirth expenses. Geiser thus does not challenge his responsibility for actual medical expenses incurred in connection with the mother’s giving birth to his daughter. The question in this case is the full or pro tanto dollar extent of the responsibility, a question left unanswered in Deats (76 NY2d 451, supra).
The father argues that he is responsible only for the "reasonable expenses” incurred in connection with the birth. He relies principally on Family Court Act § 514, which provides that "[t]he father is liable to pay the reasonable expenses of the mother’s confinement and recovery and such reasonable expenses in connection with her pregnancy as the court in its discretion may deem proper” (emphasis added). Accordingly, he posits that he is not responsible to reimburse the Department for statutory subsidies characterized as the bad debt and charity care additional surcharge mandated and built into the State’s Medicaid reimbursement formula (see, Public Health Law § 2807-c [14]). Those public service features bear no direct relationship to the medical services provided to the individual Medicaid recipient.
The Department, on the other hand, contends that it is entitled to dollar-for-dollar reimbursement without regard to actual medical care cost because it is mandated by statute to reimburse hospitals for all statutory surcharges, including the bad debt and charity care subsidies. Although the parties refer to the Family Court Act and Public Health Law § 2807-c, the additional and more precise focus should be on the Department’s right to reimbursement under Social Services Law § 367-a (2) (b). It provides:
"Any inconsistent provision of this chapter or other law notwithstanding, upon furnishing assistance under this title to any applicant or recipient of medical assistance, the local social services district or the department shall be subrogated, to the *109 extent of the expenditures by such district or department for medical care furnished, to any rights such person may have to medical support or third party reimbursement” (emphasis added).
As can be seen, the statute is silent as to whether the State is entitled to full reimbursement. The Department implicitly argues that because section 367-a (2) (b) states that reimbursement is required "to the extent of the expenditures by * * * [the] department for medical care furnished”, the third party becomes liable for dollar-for-dollar repayment in direct proportion to the State’s Medicaid reimbursement formula.
The first flaw in the Department’s contention is Social Services Law § 367-a (2) (b). It states that the Department is "subrogated” to any right of the recipient against a third party. Because statutes are to be read to give effect to all of their provisions, we may not overlook the legal significance of the term "subrogated” embedded centrally in the statute (see, McKinney’s Cons Laws of NY, Book 1, Statutes §§ 97, 231). The term "subrogated,” without qualification or explanation, suggests that it is intended to incorporate ordinary subrogation principles. None other is set forth. Regardless of whether a right of subrogation arises by operation of law, by statute or regulation, or by contractual agreement, the controlling features are the same: subrogation is wholly dependent on the subrogor’s claim against the third party and they stand in one another’s juridical shoes (see, Gerseta Corp. v Equitable Trust Co., 241 NY 418, 425-426; Pittsburgh-Westmoreland Coal Co. v Kerr, 220 NY 137, 142). The State subrogee pays the obligation to the medical provider on behalf of the primary service recipient subrogor (in this case, the mother) and becomes substituted to the same rights she has to recover against a responsible third party (in this case, the father of the child) (see, Travelers Ins. Co. v Brass Goods Mfg. Co., 239 NY 273, 276-277). The State subrogee succeeds to the position of the subrogor and may recover only to the extent its subrogor could have recovered (see, Salzman v Holiday Inns, 48 AD2d 258, 262, mod on other grounds 40 NY2d 919; Servidori v Mahoney, 129 AD2d 944, 945). It gains no additional rights.
Moreover, subrogation is not a matter of right but an equitable doctrine, designed to promote justice and is thus dependent on the particular relationship of parties and nature of controversy in each case (see, North Star Reins. Corp. v Continental Ins. Co., 82 NY2d 281, 294; King v Pelkofski, 20 *110 NY2d 326, 334; Ocean Acc. & Guar. Corp. v Hooker Electrochemical Co., 240 NY 37, 47). Equity should not countenance Social Services Law § 367-a (2) (b) being used in such instances to recoup for the public purse from a private citizen the additional public charge component of a medical assistance payment.
In this case, the uncontroverted actual hospital expenses relating to the birth of the child totaled $802 and an additional amount of $1,037 for the cost of the attending physicians. The State has nevertheless successfully pursued reimbursement for the entire Medicaid payment, $4,218.30. This is nearly 2Vi times greater than the actual expenses which would have been charged to the mother had she not qualified for Medicaid benefits. It is irrational to believe that the Legislature intended a needy recipient — and an ultimately responsible third party, needy himself, at the time the services were rendered — to subsidize at some later date the municipality’s entire payment, including proportionate public statutory surcharges built into the general formula.
Indeed, one can read the express language of Social Services Law § 367-a (2) (b) to limit the subrogation rights of the Department to reimbursement of expenses directly related to the "medical care furnished”. Since the bad debt and charity allowances provision has no relationship to the "medical care furnished” to the particular Medicaid patient, no statutory support exists for the extraordinary recoupment from an ultimately responsible third party.
To be sure, no express mention whatsoever exists in the Public Health Law justifying reimbursement from third parties for all expenses calculated under the reimbursement methodology created by the State’s Commissioner of Health. Public Health Law § 2807-c represents the methodology employed by the Commissioner of Health in calculating Statewide reimbursement rates which will be paid to hospitals for providing medical services to Medicaid patients (see, 42 USC § 1396a). It does not allow aggrandizement of what the State or municipality can collect from a third party beyond its subrogation rights under Social Services Law § 367-a (2) (b) (but see, Travelers Ins. Co. v Cuomo, 14 F3d 708 [2d Cir 1993], cert granted sub nom. New York State Conference of Blue Cross & Blue Shield Plans v Travelers Ins. Co., 514 US —, 115 S Ct 305 [orally argued Jan. 18, 1995]).
Our holding gains additional persuasive force from the *111 decisions in various other States construing municipal entitlement to exercise rights of subrogation to recover medical assistance payments from a responsible third party (see, e.g., Hedgebeth v Medford, 74 NJ 360, 378 A2d 226; White v Sutherland, 92 NM 187, 585 P2d 331, cert denied sub nom. Health & Social Servs. Dept, v White, 92 NM 79, 582 P2d 1292; State v Cowdell, 421 NE2d 667 [Ind Ct App]; Smith v Alabama Medicaid Agency, 461 So 2d 817 [Ala App]).
IV.
We reject the Department’s absolutist reading of 42 USC § 1396a (a) (25) in connection with the requirement to pursue responsible third parties. The Federal Medicaid laws do not require or even suggest that a State must seek dollar-for-dollar reimbursement, based on complicated, variable Medicaid formulas containing other public charge components for which society at large is ultimately responsible (see, 42 USC § 1396a [a] [25]). Federal law simply required that a State "take all reasonable measures to ascertain the legal liability of third parties * * * to pay for care and services available under the plan” (42 USC § 1396a [a] [25] [A]). Whenever medical assistance is provided to an eligible recipient, the State must "seek reimbursement” from such third parties (42 USC § 1396a [a] [25] [B]). The most direct expression in Federal authority to the precise issue of how much "reimbursement” is due is found in the Federal regulation that provides that the "third party” "may be liable to pay all or part of the expenditures for medical assistance furnished under a State plan” (42 CFR 433.136 [emphasis added]; see also, 42 CFR 433.139 [b] [1], [2] [ii]). Indeed, the very next clause of the Federal Medicaid statute, 42 USC § 1396a (a) (25) (B), provides that where legal liability exists and the amount of reimbursement the agency can recover exceeds the costs of recovery, the agency "will seek reimbursement for such assistance to the extent of such legal liability” (emphasis added; see also, 42 USC § 1396a [a] [25] [C]). These legislations connote a Federal expectation of limitations to the State’s reimbursement rights, namely, that the responsible third party should be liable only for Medicaid expenditures related directly to the actual medical services provided to the patient. Medicaid statutory subsidies or surcharges, including bad debt and charity allowances, built into Medicaid payment formulas, surely do not relate to the actual medical service rendered to the individual Medicaid *112 patient. Thus, these allowances are not "expenditures for medical assistance” even under Federal law.
Finally, as we have demonstrated, curtailing the public payor’s recoupment rights to the actual cost of medical services paid for does not offend or violate Federal Medicaid reimbursement mandates or place the New York program at any risk or jeopardy of loss of Federal participation or financial replenishment.
Accordingly, the order of the Appellate Division should be reversed, with costs, and the proceeding remitted to Family Court for further proceedings in accordance with this opinion.
Chief Judge Kaye and Judges Simons, Titone, Smith and Ciparick concur; Judge Levine taking no part.
Order reversed, with costs, and matter remitted to Family Court, Washington County, for further proceedings in accordance with the opinion herein.