564 S.E.2d 173

**STATE of West Virginia ex rel. WEST VIRGINIA DEPARTMENT OF HEALTH AND HUMAN RESOURCES, Bureau for Child Support Enforcement and Jennifer Dawn Shepard, Plaintiffs Below, Appellees,**

v.

**James B. CARPENTER, Defendant Below, Appellant.**

No. 29774.

Supreme Court of Appeals of West Virginia.

Submitted Feb. 6, 2001.

Decided April 26, 2002.

Concurring Opinion in part and Dissenting in part of Justice Albright May 15, 2002.

Michele L. Rusen, Rusen & White, Parkersburg, West Virginia, Attorney for Appellant.

Kimberly D. Bentley, Assistant General Counsel, Charleston, Daniel B. Douglass, II, Law Office of Daniel B. Douglass, II, Parkersburg, West Virginia, Attorneys for Ap-

pellee, West Virginia Department of Health and Human Resources, Bureau for Child Support Enforcement.

C. Blaine Myers, Myers & Powell, Parkersburg, West Virginia, Attorney for Appellee, Jennifer Dawn Shepard.

DAVIS, Chief Justice:

James Carpenter, appellant/defendant below (hereinafter referred to as "Mr. Carpenter"), appeals from an order of the Circuit Court of Wood County. The circuit court's order required Mr. Carpenter to reimburse the Department of Health and Human Resources, Bureau for Child Support Enforcement (hereinafter referred to as "DHHR"), appellee/plaintiff below, $4,878.59 for birth and medical expenses paid on behalf of Jennifer Dawn Shepard (hereinafter referred to as "Ms. Shepard"), appellee/plaintiff below. Mr. Carpenter has raised numerous contentions in opposition to such payment. Essentially, Mr. Carpenter is alleging that he and Ms. Shepard should each be required to pay the reimbursement. Alternatively, Mr. Carpenter argues that a determination should be made of his ability to pay for the birth and medical expenses of his child. After reviewing the briefs and record in the case, the circuit court's order is affirmed, in part, and reversed, in part, and the case is remanded.

I.

FACTUAL AND PROCEDURAL HISTORY

This case arose as a result of the birth of a child to Ms. Shepard and Mr. Carpenter. Though not married, Ms. Shepard and Mr. Carpenter were living together in 1997 when Ms. Shepard became pregnant. During her pregnancy, Ms. Shepard sought and obtained medical financial assistance from DHHR. On November 9, 1997, Ms. Shepard gave birth to their child. Mr. Carpenter acknowledged paternity of the child immediately after the child was born. However, in 1998, Mr. Carpenter moved out of the home he shared with Ms. Shepard.

In 1999, the instant action was filed against Mr. Carpenter. The action sought to establish child support for the parties' child, as well as reimbursement of the birth and medical expenses paid by DHHR. The case was heard by a family law master[1] on May 5, 1999, who submitted recommended findings of fact and conclusions of law to the circuit court. This recommendation included a requirement that Mr. Carpenter reimburse the full amount of the birth and medical expenses paid by DHHR on behalf of Ms. Shepard. Mr. Carpenter objected to he being solely responsible for payment of these expenses. The circuit court remanded the issue for the family law master to explain the reason for requiring Mr. Carpenter to be exclusively responsible for the birth and medical expenses. The family law master reconsidered the issue and again recommended Mr. Carpenter reimburse DHHR the full amount of birth and medical expenses. By order entered August 11, 2000, the circuit court adopted the family law master's recommended findings and conclusions. It is from these rulings that Mr. Carpenter now appeals.

II.

STANDARD OF REVIEW

■ This Court employs a three-pronged standard of review of appeals involving domestic relations matters. We set out this standard in Syllabus point 1 of *Burnside v. Burnside*, 194 W.Va. 263, 460 S.E.2d 264 (1995), as follows:

In reviewing challenges to findings made by a family law master that also were adopted by a circuit court, a three-pronged standard of review is applied. Under these circumstances, a final equitable distribution order is reviewed under an abuse of discretion standard; the underlying fac-

---

1. During the pendency of this appeal, the Legislature abolished the judicial office of family law master and replaced it with the judicial office of family court judge. *See* W. Va.Code § 51–2A–1, *et seq.*

tual findings are reviewed under a clearly erroneous standard; and questions of law and statutory interpretations are subject to a *de novo* review.

By this standard, we review the arguments of the parties.

## III.

## DISCUSSION

### A. Requiring Reimbursement to be Paid Only by Mr. Carpenter

Mr. Carpenter has postured a number of reasons as to why it was error to require him to pay the full amount of reimbursement owed to DHHR for birth and medical expenses. The circuit court, in part, relied upon this Court's holding in *Kathy L.B. v. Patrick J.B.*, 179 W.Va. 655, 371 S.E.2d 583 (1988), to hold Mr. Carpenter exclusively responsible for the reimbursement.

The decision in *Kathy L.B.* involved the birth of a child born out of wedlock. The mother of the child sought, among other things, reimbursement for birthing and medical expenses from the biological father of the child. The lower tribunals denied such relief. On appeal, this Court noted that nothing in the paternity statutes precluded recovery of birthing and medical expenses from the biological father as child support payment. Consequently, we held in Syllabus point 1, in part, of *Kathy L.B.* that "[i]n a paternity action . . . the mother may recover the birth expenses . . . from the child's natural father." 179 W.Va. 655, 371 S.E.2d 583.

*Kathy L.B.* involved the payment of birth expenses under our paternity statute. This prior decision also establishes a basis for the trial court's determination that Mr. Carpenter is obligated to reimburse DHHR for birthing and medical expenses as *Kathy L.B.* and the instant case both involved children born out of wedlock and biological fathers who did not provide financial support for birth and medical expenses. However, in *Kathy L.B.*, the mother actually made the payments. In the instant case, DHHR made the payments. Therefore, a simple comparison of these facts suggests that it would be inconsistent for this Court to require a biological father to pay birth and medical expenses when the mother actually bore the costs, but to relieve the father of such an obligation when DHHR pays such expenses because of the mother's indigence.

■ On appeal to this Court, Mr. Carpenter contends that the requirement under *Kathy L.B.*, that the biological father of a child born out of wedlock has the exclusive burden of paying birth expenses, is inconsistent with W. Va.Code § 48–12–102.[2] We disagree. The relevant language in W. Va.Code § 48–12–102 (2001) (Repl.Vol.2001) provides that "[i]n every action to establish or modify an order which requires the payment of child support, the court shall ascertain the ability of each parent to provide medical care for the children of the parties." *Kathy L.B.* is not inconsistent with the equitable cost sharing provided under W. Va.Code § 48–12–102 because *Kathy L.B.* addressed the issue of payment of *past* birth expenses paid by a mother for a child born out of wedlock. On the other hand, W. Va.Code § 48–12–102 was intended to provide for establishing, if possible, joint payment of *prospective* health insurance coverage for children.[3] *See* Syl. pt.

---

**2.** At the time of the underlying proceedings, the relevant statutory provision was W. Va.Code § 48–2–15a(b). However, in 2001, the Legislature repealed W. Va.Code § 48–2–15a(b) and re-enacted it as W. Va.Code § 48–12–102. *Compare* W. Va.Code § 48–2–15a(b) (1996) (Repl.Vol. 1996) *with* W. Va.Code § 48–12–102 (2001) (Repl.Vol.2001).

**3.** W. Va.Code § 48–12–102 reads in full as follows:

In every action to establish or modify an order which requires the payment of child support, the court shall ascertain the ability of each parent to provide medical care for the children of the parties. In any temporary or

final order establishing an award of child support or any temporary or final order modifying a prior order establishing an award of child support, the court shall order one or more of the following:

(1) The court shall order either parent or both parents to provide insurance coverage for a child, if such insurance coverage is available to that parent on a group basis through an employer, multiemployer trust or through an employee's union. If similar insurance coverage is available to both parents, the court shall order the child to be insured under the insurance coverage which provides more comprehensive benefits. If such insurance coverage is not available at the time of the entry of the

2, *Ball v. Wills*, 190 W.Va. 517, 438 S.E.2d 860 (1993) ("West Virginia Code [§ 48–12–102] mandates that the trial court shall ascertain each parent's ability to provide medical care for their children each time an order requiring child support payments is either established or modified."). Thus, W. Va. Code § 48–12–102 does not apply to an action brought by a mother or DHHR that seeks reimbursement for past birth expenses.

■ Mr. Carpenter next argues that he is being unlawfully discriminated against on the basis of his gender, because Ms. Shepard is not obligated to assume part of the costs of the birth and medical expenses. We will review this equal protection claim under rational basis scrutiny.[4] *See* Syl. pt. 4, in part, *Carvey v. West Virginia State Bd. of Educ.*, 206 W.Va. 720, 527 S.E.2d 831 (1999) ("Where economic rights are concerned, we look to see whether the classification is a rational one based on social, economic, historic or geographic factors, whether it bears a reasonable relationship to a proper govern-

mental purpose, and whether all persons within the class are treated equally. Where such classification is rational and bears the requisite reasonable relationship, the statute does not violate ... equal protection[.]" (internal quotations and citations omitted)). *Accord* Syl. pt. 4, *Gibson v. West Virginia Dep't of Highways*, 185 W.Va. 214, 406 S.E.2d 440 (1991); Syl. pt. 4, *Hartsock–Flesher Candy Co. v. Wheeling Wholesale Grocery Co.*, 174 W.Va. 538, 328 S.E.2d 144 (1984); Syl. pt. 7, *Atchinson v. Erwin*, 172 W.Va. 8, 302 S.E.2d 78 (1983).

In response to this argument, DHHR has presented several reasons for its policy of not seeking reimbursement from unwed mothers for birth and medical expenses. Before DHHR makes the determination to provide payment for birth and medical expenses for a woman, the woman must prove that she is indigent under DHHR guidelines. In other words, Ms. Shepard became eligible for assistance from DHHR only because a determination was made that she could not pay the birth and medical expenses for her child.[5]

order, the order shall require that if such coverage thereafter becomes available to either party, that party shall promptly notify the other party of the availability of insurance coverage for the child.

(2) If the court finds that insurance coverage is not available to either parent on a group basis through an employer, multiemployer trust or employees' union, or that the group insurer is not accessible to the parties, the court may order either parent or both parents to obtain insurance coverage which is otherwise available at a reasonable cost.

(3) Based upon the respective ability of the parents to pay, the court may order either parent or both parents to be liable for reasonable and necessary medical care for a child. The court shall specify the proportion of the medical care for which each party shall be responsible. If the amount of the award of child support in the order is determined using the child support guidelines, the court shall order that nonrecurring or subsequently occurring uninsured medical expenses in excess of two hundred fifty dollars per year per child shall be separately divided between the parties in proportion to their adjusted gross incomes.

(4) If insurance coverage is available, the court shall also determine the amount of the annual deductible on insurance coverage which is attributable to the children and designate the proportion of the deductible which each party shall pay.

(5) The order shall require the obligor to continue to provide the bureau for child sup-

port enforcement with information as to his or her employer's name and address and information as to the availability of employer-related insurance programs providing medical care coverage so long as the child continues to be eligible to receive support.

4. We wish to make clear that we are not holding that discrimination based on pregnancy or other inherently gender-related characteristics is always to be considered under a rational basis analysis. We recognize that in most cases where gender-based classifications are linked to allegedly discriminatory practices, such classifications are subject to mid-level equal protection scrutiny. *See* Syl. pt. 5, *Israel v. West Virginia Secondary Schools Activities Com'n*, 182 W.Va. 454, 388 S.E.2d 480 (1989) ("A gender-based classification challenged as denying equal protection under Article III, Section 10 of the West Virginia Constitution can be upheld only if the classification serves an important governmental objective and is substantially related to the achievement of that objective.").

5. Contrary to the unsupported allegations in Mr. Carpenter's brief, DHHR has indicated that when medical financial assistance is given to a pregnant woman who is married and whose husband resides in the home, DHHR does not seek reimbursement from the husband because a prior determination would have been made that the entire family, including the husband, was indigent.

DHHR also asserts that it does not look at the income of a woman after a child has been born in order to determine whether the woman is in a better financial situation that may enable her to pay the reimbursement. Rather, DHHR has taken a policy position that pregnant indigent women may be discouraged from seeking necessary medical benefits if they would later be obligated to repay monies awarded. Thus, DHHR contends that its failure to seek reimbursement from Ms. Shepard was not because she was a woman but because it had determined that she was financially unable to pay.[6] *See In re Comm'r of Soc. Servs. of Franklin County,* 207 A.D.2d 162, 623 N.Y.S.2d 14, 16 (1995), *modified sub nom., Commissioner of Soc. Servs. of Franklin County v. Bernard B.,* 87 N.Y.2d 61, 637 N.Y.S.2d 659, 661 N.E.2d 131 (1995) ("[T]he mother's receipt of ... benefits to cover the birth established, per se, an inability to contribute to those expenses.").

In the case of *Commissioner of Social Services of Franklin County v. Bernard B.,* 87 N.Y.2d 61, 637 N.Y.S.2d 659, 661 N.E.2d 131 (1995), a claim was made that requiring an unwed father exclusively to make reimbursement to a social service agency for birthing expenses constituted gender discrimination. The court in that case rejected the argument based upon the following reasoning:

> The mother is eligible for Medicaid assistance in connection with her pregnancy and birth-related costs as a direct recipient. Her eligibility for these benefits is based on her medical condition of pregnancy, and under the applicable Medicaid provisions, a recipient is protected against liability to the Department for Medicaid benefits that were lawfully paid.... Thus,

the mother's condition of pregnancy provides the basis for her eligibility for benefits and, at the same time, provides the basis for her immunity from recoupment. The unwed father, on the other hand, because he is not pregnant and does not give birth, is not a direct recipient of any medical assistance in connection with his child's birth....

Accordingly, rather than gender, it is the physical condition of pregnancy that distinguishes the unwed mother and father's statutory liability for the mother's birth-related expenses. Because normal pregnancy is an objectively identifiable physical condition with unique characteristics, absent a showing that distinctions involving pregnancy are mere pretexts designed to effect an invidious discrimination against members of one sex or the other, a classification based on pregnancy does not constitute a gender-based classification.... Thus, the difference in treatment of fathers and mothers, which rests on the physical status of pregnancy, is subject only to rational basis scrutiny.

We conclude that a rational basis for the distinction exists. As was previously discussed, the imposition of third-party liability on unwed fathers in this context furthers the congressional policies underlying the Medicaid program. Additionally, the Legislature could rationally determine that imposing the threat of future liability on a medically indigent pregnant woman might discourage her from obtaining medical care necessary for the health and survival of both herself and the child, a consideration not applicable to the liability of the unwed father. Because they are, thus, rationally related to a physical distinction—pregnan-

Alternatively, Mr. Carpenter has contended that, as an unwed father, he is being discriminated against because DHHR did not take into consideration his income status before awarding Ms. Shepard medical financial assistance. DHHR has explained, and we concur, that paternity of an out of wedlock child generally is not established until after a child is born. Consequently, DHHR can only consider the income of the woman carrying the out of wedlock child when providing such assistance.

6. We will also note that, while DHHR did not draw the Court's attention to any applicable fed-

eral law, our research revealed another, more fundamental basis for DHHR not seeking reimbursement from Ms. Shepard. Federal law prohibits all states from seeking recovery of medical assistance from a recipient, when the assistance was properly paid from a Medicaid program funded partially by federal money. *See* 42 U.S.C.A. § 1396a(a)(18) (1992); 42 U.S.C.A. § 1396 (1992). *See also In re Paternity of N.L.M.,* 166 Wis.2d 306, 479 N.W.2d 237 (1991) (reversing ruling that required mother to pay reimbursement for birth expenses).

cy—the imposition of different standards of liability with respect to medically indigent expectant mothers and fathers is not unconstitutional.

*Bernard B.*, 637 N.Y.S.2d at 664–65, 661 N.E.2d 131 (internal citations and quotations omitted).[7] *Accord Costello ex rel. Stark v. Geiser*, 85 N.Y.2d 103, 623 N.Y.S.2d 753, 647 N.E.2d 1261 (1995), *superseded by statute on other grounds as stated in Wayne County Dep't of Soc. Servs. ex rel. Van Dusen v. Petty*, 273 A.D.2d 943, 709 N.Y.S.2d 791 (2000). *See also In re Paternity of N.L.M.*, 166 Wis.2d 306, 479 N.W.2d 237 (1991) (finding that state medical assistance program could not seek reimbursement of birth expenses from mother, on whose behalf such expenses were paid, where no evidence was presented that payments had been made incorrectly).

In view of the foregoing discussion we find that DHHR's policy of not seeking reimbursement of birth and medical expenses from indigent pregnant women is a rational one and bears a reasonable relationship to a proper governmental purpose. We hold, therefore, that the Department of Health and Human Resources, Bureau for Child Support Enforcement may file an action to recover reimbursement of monies it paid for birth and medical expenses exclusively from the biological father of a child born out of wedlock. Based upon our holding, the circuit court correctly found that DHHR could seek reimbursement exclusively from Mr. Carpenter.

### B. Determination of Mr. Carpenter's Ability to Pay

Mr. Carpenter additionally complains of the failure and refusal of the lower tribunals to consider his ability to pay the reimbursement sought. DHHR contends that neither the applicable statutes nor the case law requires consideration of Mr. Carpenter's abili-

ty to pay reimbursement for birth and medical expenses. Mr. Carpenter responds by arguing that the principles applied in *State ex rel. Department of Human Services by Adkins v. Huffman*, 175 W.Va. 401, 332 S.E.2d 866 (1985), should be made applicable to the instant case. We agree.

The decision in *Huffman* concerned whether or not a biological father's ability to pay had to be considered when DHHR sought reimbursement for AFDC benefits paid to a mother and her child. We concluded in Syllabus point 2, in part, of *Huffman* that DHHR's right to reimbursement for AFDC benefits "is dependent upon the ability of the responsible relative to pay, and the determination of ability to pay must be made through an administrative hearing or court proceeding." 175 W.Va. 401, 332 S.E.2d 866.

In the instant proceeding, however, DHHR contends that a *Huffman* hearing is not applicable because, unlike AFDC benefits, there is no criteria for determining Mr. Carpenter's ability to pay birth and medical expenses. We do not find this argument to be persuasive. DHHR has admitted that a formula exists which was used to determine whether Ms. Shepard was eligible to receive birth and medical expenses. Likewise, DHHR has conceded that a formula exists for determining whether an intact married couple qualifies for birth and medical expenses. Consequently, we do not accept DHHR's representation that no criteria exists for determining Mr. Carpenter's ability to pay. The formula used in either of the above scenarios could be tailored to assess Mr. Carpenter's financial capabilities.

The issue of ability to pay reimbursement for birth expenses previously has been addressed in the case of *In re Commissioner of Social Services of Franklin County*, 207 A.D.2d 162, 623 N.Y.S.2d 14 (1995).[8] In that

---

7. Other courts similarly have employed a rational basis analysis when reviewing classifications involving the condition of pregnancy. *See, e.g., Geduldig v. Aiello*, 417 U.S. 484, 94 S.Ct. 2485, 41 L.Ed.2d 256 (1974), *superseded by statute as stated in Newport News Shipbuilding & Dry Dock Co. v. E.E.O.C.*, 462 U.S. 669, 103 S.Ct. 2622, 77 L.Ed.2d 89 (1983); *Kirkhuff v. Nimmo*, 683 F.2d 544 (D.C.Cir.1982); *Jane L. v. Bangerter*, 794 F.Supp. 1528 (D.Utah 1992); *Heath v. Westerville*

*Bd. of Educ.*, 345 F.Supp. 501 (S.D.Ohio 1972); *Pocklington v. Duval County Sch. Bd.*, 345 F.Supp. 163 (M.D.Fla.1972).

8. This case subsequently was modified by the decision in *Commissioner of Social Services of Franklin County v. Bernard B.*, 87 N.Y.2d 61, 637 N.Y.S.2d 659, 661 N.E.2d 131 (1995).

decision, a social service agency filed an action against an unwed father to recover reimbursement for Medicaid funds paid in connection with the birth of the child. At the time of the child's birth, the father was himself a recipient of Medicaid benefits. The court observed that because of the mother's indigence at the time of the child's birth, the social service agency could not seek reimbursement from her. Consequently, equal protection principles prohibited the agency from seeking reimbursement from the father, who was in the same financial situation as the mother when the benefits were obtained. The decision held that "to impose liability upon a father who is no more financially able than the mother ... would violate principles of gender-neutrality." *Franklin County*, 623 N.Y.S.2d at 16. *See also Le Page ex rel. Christine L. v. Glen L.*, 242 A.D.2d 105, 673 N.Y.S.2d 763, 764 (1998) ("[A]n unwed father's liability for the birth-related expenses paid on behalf of his child ... is determined by examining the father's ability to pay at the time of the birth." (internal quotations and citation omitted)); *Steuben County Dep't of Soc. Servs. v. Deats*, 76 N.Y.2d 451, 560 N.Y.S.2d 404, 407, 560 N.E.2d 760 (1990) ("[A]n unwed father's liability to make reimbursement for such expenses depends upon his ability to pay at the time of the birth.").[9] *But see Minnesota ex rel. Kandiyohi County v. Swanson*, 381 N.W.2d 84 (Minn.Ct.App. 1986) (holding biological father responsible for reimbursing state medical assistance program for birth expenses but also considering mother's financial situation to determine whether she would be liable to biological father for portion of such obligation).

▮▮▮ In view of the foregoing, we hold that the right of the Department of Health and Human Resources, Bureau for Child Support Enforcement to request the biological father of a child born out of wedlock to make reimbursement for birth and medical expenses is dependent upon the biological father's ability to pay such costs on the date the mother was granted birth and medical benefits. The determination of the biological father's ability to pay must be made through administrative action or a court proceeding. Insofar as Mr. Carpenter was denied a hearing to determine his ability to pay the reimbursement sought by DHHR, this case must be reversed and remanded for such a hearing.

## IV.

### CONCLUSION

In view of the foregoing, the circuit court's order is affirmed to the extent that it requires Mr. Carpenter to be exclusively responsible for reimbursement of Ms. Shephard's birth and medical expenses. However, the order is reversed insofar as Mr. Carpenter was not afforded a hearing to determine his ability to make such reimbursement. This case is further remanded for the purpose of holding an ability to pay hearing.

Affirmed, in part; Reversed, in part; and Remanded.

Justices MAYNARD and ALBRIGHT concur, in part, and dissent, in part, and reserve the right to file concurring and dissenting opinions.

ALBRIGHT, Justice, concurring, in part, and dissenting, in part.

(Filed May 15, 2002)

While I concur with the majority's decision that a *Huffman*-type hearing[1] must be held, I part ways with the majority's determination that no discrimination results by applying this Court's holding in *Kathy L.B. v. Patrick J.B.*, 179 W.Va. 655, 371 S.E.2d 583 (1988), that the mother *may* recover the birth expenses from the child's natural father in a paternity action, to require a biological father to be responsible for the *entirety* of the birth expenses where the mother was

---

9. For cases holding biological fathers responsible for reimbursing Medicaid programs for birth expenses paid on behalf of their biological children, see generally *Perry v. Dowling*, 95 F.3d 231 (2d Cir.1996); *In re Adoption of A.P.C.*, 776 So.2d 567 (La.Ct.App.2000), *writ denied sub nom.*, *In re Adoption of A.P.A.*, 785 So.2d 835 (La.2001); and *Witt v. Seabrook*, 210 Mich.App. 299, 533 N.W.2d 22 (1995).

1. *See* Syl. Pt. 2, in part, *State ex rel. Dep't of Human Servs. v. Huffman*, 175 W.Va. 401, 332 S.E.2d 866 (1985) (holding that DHHR's right to reimbursement for AFDC benefits "is dependent upon the ability of the responsible relative to pay, and the determination of ability to pay must be made through an administrative hearing or court proceeding").

granted birth and medical benefits from the DHHR. *See id.* at syl. pt. 1, 371 S.E.2d 583. I also take issue with the majority's holding insofar as the determination of a biological father's ability to pay is tied to "the date the mother was granted birth and medical benefits." Syl. Pt. 3, in part, *State ex rel. W.Va. DHHR v. Carpenter*, 211 W.Va. 176, 564 S.E.2d 173 (2002). Additionally, I think that the "ability to pay" determination should be resolved in a judicial forum, rather than through an administrative proceeding.

## I. Discrimination

The majority quickly dismissed Mr. Carpenter's argument that requiring the biological father of a child born out of wedlock to be *exclusively* responsible for the mother's birth-related expenses does not comport with this state's statutory scheme of basing the medical care component of child support "upon the respective ability of the parents to pay." W.Va.Code § 48–12–102 (2001). While the majority may be "technically" correct that the provisions of West Virginia Code § 48–12–102 are inapplicable to a proceeding initiated by the DHHR to recover birth expenses [2] because that statute pertains to securing health insurance coverage in connection with fixing a child support obligation, they clearly do the law, and Mr. Carpenter, a disservice by not exploring the rationale which underlies that statutory provision.

The concept of assessing the support obligation and fixing support payments based on the ability of the parties to contribute is clearly an integral aspect of our spousal and child support system. *See* W.Va.Code §§ 48–6–301; 48–12–102, 48–13–103 (2001). Thus, the majority's failure to give serious consideration to the issue of whether liability for birth expenses, like other types of support, should be analyzed under an ability to pay format is shortsighted. Since this Court created a mother's right to seek recovery of

birth expenses from the child's natural father by looking to the legislatively drawn bases of support that are invoked upon proof of paternity, it stands to reason that the legislative framework for establishing medical support for children might be of assistance in resolving whether a biological father should be *fully* responsible for those birth-related expenses, or, consonant with other support obligations, only be required to contribute to the expenses based upon his ability to pay. *See Kathy L.B.*, 179 W.Va. at 659, 371 S.E.2d at 587. Because equitable theories of cost-sharing permeate the child support system set forth in chapter 48 of our state code, logic suggests that the issue of liability for birth costs should be approached in a fashion that is harmonious with other support obligations, rather than to assume the father bears *full* responsibility solely because federal law prevents recovery of those expenses from the mother.[3]

The notion of determining responsibility for birth-related expenses based upon the ability to pay has been codified by the Minnesota legislature in its Parentage Act, which is based upon the Uniform Parentage Act: [4]

> The judgment or order may direct the appropriate party to pay all or a proportion of the reasonable expenses of the mother's pregnancy and confinement, including the mother's lost wages due to medical necessity, after consideration of the relevant facts, including the relative financial means of the parents; the earning ability of each parent; and any health insurance policies held by either parent, or by a spouse or parent of the parent, which would provide benefits for the expenses incurred by the mother during her pregnancy and confinement.... Remedies available for the collection and enforcement of child support apply to confinement

2. *See* W.Va.Code § 9–5–11(a) (1995) (Repl.Vol. 1998).

3. *See* 42 U.S.C. §§ 1396a[a][18] (1994); 1396p[b] (1994).

4. *See* Uniform Parenting Act § 15, 9B U.L.A. (1973). Note, however, that the drafters of the

2000 Uniform Parenting Act omitted the language from former section 15, now section 636 of the Act, pertaining to a father's payment of confinement and pregnancy costs, stating that "[t]his Act leaves such matters to other state law." Uniform Parenting Act § 636, 9B U.L.A. 351 (2001).

costs and are considered additional child support.

Minn.Stat. Ann. § 257.66 (West 2001); *see also State ex rel. Kandiyohi County v. Swanson,* 381 N.W.2d 84, 86 (Minn.App.1986) (applying subdivision 3 of Minnesota Statute § 257.66 to require remand for determining whether mother would owe father one-half of birth expenses upon his payment of full amount of expenses).

While the DHHR asserts that Mr. Carpenter is necessarily the only party that can be held liable [5] for the birth-related expenses at issue here given the interplay with federal welfare laws, which preclude seeking reimbursement from the mother,[6] it is important to realize that no statutory provision or prior decision of this Court spoke to the issue of what amount of the birthing and medical expenses the biological father could be required to pay. Nothing in *Kathy L.B.,* or in subsequent code enactments, suggests that the father is responsible for the *entirety* of these expenses. Until now, a circuit court had the discretion to determine what amount, if any, of these birth-related expenses an

unwed father could be expected to pay.[7] By completely eviscerating the lower court's discretion to consider the financial circumstances of the father at the obligation-setting phase of the determination, I am convinced that the majority has gone too far.[8] *See Walker v. Walker,* 2001 WL 965519 *2 (Mich. App.2001) (recognizing that trial court's discretion to apportion birth-related costs between mother and father under Paternity Act prevented statute from violating Equal Protection clause based on gender).

To reach its conclusion that no gender-based discrimination results from the DHHR's policy to seek the full amount of the birthing expenses from an unwed father where the mother has applied for and obtained a medical card, the majority *completely* ignores the first prong of the Equal Protection argument presented to the Court. The initial Equal Protection hurdle is whether a denial of Equal Protection results through imposition of *liability* solely on a biological father for birth-related costs. The primary case upon which the majority relies to find no resulting gender-based discrimina-

---

**5.** *See Walker v. Walker,* 2001 WL 965519 *3 (Mich.App.2001) (discussing distinction between statutory liability and financial liability and concluding that "[a] determination that one person is liable for a debt does not necessarily exclude all others").

**6.** *See supra* note 3.

**7.** I note that the statute at issue in the New York case heavily relied upon by the majority contains the critical element of reposing discretion in the trial court to decide how to apportion the birth expenses between the birth parents:
"[T]he court shall direct the parent or parents possessed of sufficient means or able to earn such means to pay * * * a fair and reasonable sum * * * for [the] child's support and education * * *. The *order may also direct each parent to pay an amount as the court may determine and apportion* for * * * the necessary expenses incurred by or for the mother in connection with her confinement and recovery [and] such expenses in connection with the pregnancy of the mother *as the court may deem proper.*"
*In re Comm'r of Social Servs. v. Bernard B.,* 87 N.Y.2d 61, 637 N.Y.S.2d 659, 664 n. 2, 661 N.E.2d 131 (1995) (citing section 545 of New York Family Court Act) (emphasis added).

**8.** Another issue which arises due to the removal of all discretion from the lower court concerning

the amount of the birth-related expenses that the biological father is responsible for is the apparent omission of any consideration regarding whether the expenses were "necessary"—a statutory requisite to including such expenses in any support award. *See* W.Va.Code § 48-1-244(3) (2001) (defining support for mother to include "necessary expenses incurred by or for the mother in connection with her confinement or of other expenses in connection with the pregnancy of the mother"). While this Court, in announcing its holding in syllabus point two of *Kathy L.B.,* was clear to hold that any recovery of birth-related expenses from an unwed biological father must be made pursuant to the former statutory version of West Virginia Code § 48-1-244, the majority glosses over the need to initially find that the expenses at issue were "necessary" by directing that the entirety of whatever amount DHHR paid on the mother's behalf is recoverable against the child's father. *See* W.Va.Code § 48A-1-3(20)(C) (1986); Syl. Pt. 2, *State ex rel. W.Va. DHHR v. Carpenter,* 211 W.Va. 176, 564 S.E.2d 173 (2002); *see also Huffman,* 175 W.Va. at 404, 332 S.E.2d at 870 (discussing fact that DHHR's recovery from a third-party is not always "the full amount of AFDC benefits paid out" and noting further that "[t]he actual amount of AFDC benefits paid to the assignor provides a ceiling and not a floor on state recoupment").

186

tion initially addressed and resolved this same issue by doing exactly what the majority refused to do here. The New York Court of Appeals looked to the support section of the Family Court Act after determining that the statute imposing discretionary liability for birth-related expenses upon the father had to be read in *pari materia* with the later-enacted support section of the Act, which permitted the trial court to apportion these expenses and other child-rearing expenses among the parents based on their respective ability to pay for such expenses. *See In re Comm'r of Social Servs. v. Bernard B.*, 87 N.Y.2d 61, 637 N.Y.S.2d 659, 663–64, 661 N.E.2d 131 (1995). In *Bernard B.*, the court determined that "section 514 [of the Family Court Act] is properly understood as authorizing the court to impose liability without regard to gender" based solely on the fact that the trial court had *discretion* to "impose[ ] liability for these [birth-related costs] on *either* parent." 637 N.Y.S.2d at 663–64, 661 N.E.2d 131. Only after this first hurdle was cleared did the New York Court proceed to determine whether gender-based discrimination resulted from the singular recoupment of these birth-related costs from unwed biological fathers.[9] *Id.* at 664.

To be clear, it is not a statutory directive that imposes full responsibility on the unwed father for birth-related costs, but a court-imposed one. *Cf.* W.Va.Code § 48–1–244(3) to *Carpenter*, W.Va., S.E.2d, syl. pt. 2. None-

theless, it is the wholesale removal of any discretion on the trial court's part in assessing liability for those birth-related costs that convinces me that gender-based discrimination results at the liability stage of the process when biological fathers are held exclusively responsible for these costs without any consideration of apportioning such costs based upon an ability to pay.

II. Date for Determining Ability to Pay

I disagree with the majority's decision to link the determination of the father's ability to pay solely to the date on which the mother obtained birth and medical benefits from the state. The right of recovery against the father for birth-related costs incurred by the mother is admittedly steeped in third-party liability. *See* W.Va.Code §§ 9–5–11(a), 48–1–244(3); *Bernard* B., 637 N.Y.S.2d at 663. However, just as the New York Court determined in *Bernard B.* that there was no state or federal statutory basis for requiring an ability to pay determination to be made at the time the expenses were incurred, there is similarly no basis for the majority's determination in the instant case that the ability to pay determination should only be made concurrent with the chronological granting of the medical and birth-related benefits to the mother. *See id.* Instead, the father's ability to pay should be determined, like other support obligations, by examining his present ability to pay.[10] *See, e.g.,* W.Va.Code § 48–12–102; *see Bernard B.*, 637 N.Y.S.2d at 663.

9. While I do not challenge the majority's determination that there is a rational relationship underlying the DHHR's policy of not seeking reimbursement of birth-related costs from indigent women, I question the *clear* departure from this Court's holding that the intermediate level of scrutiny applies to Equal Protection claims that involve issues of gender. *See* Syl. Pt. 5, *Israel v. West Virginia Secondary Schools Activities Comm'n*, 182 W.Va. 454, 388 S.E.2d 480 (1989). Without any explanation for its abandonment of a higher-level of scrutiny (normally, gender classifications can only withstand Equal Protection analysis where the classifications serve important governmental objectives and are shown to be substantially related to achieving those objectives), the majority simply veered from the accepted analytical path with the cautionary caveat that it may decide not to similarly veer from such path in the future. *See Carpenter*, 211 W.Va. at 180, n. 4, 564 S.E.2d at 177, n. 4.

The majority further clouds the future of Equal Protection analysis for the practitioners of this

state by relying almost exclusively on a case that concludes that pregnancy-based classifications are, as a rule, medical conditions and, therefore, not gender-based classifications. Despite its apparent adherence to the gender discussion in *Bernard B.*, the majority nonetheless characterizes pregnancy as "inherently gender-related." *See Carpenter*, 211 W.Va. at 180, n. 4, 564 S.E.2d at 177 n. 4. Under well-established law, the only way the majority could properly apply the rational relationship level of Equal Protection analysis was to find that the classification was not gender-based-a conclusion that the majority never makes.

10. Moreover, to make a determination retroactive to a date that precedes any establishment of paternity simply defies logic. *See Carpenter*, 211 W.Va. at 180, n. 5, 564 S.E.2d 177, n. 5 (acknowledging that "paternity of an out of wedlock child is generally not established until after a child is born"). Additionally, the setting of a finite date restriction for making an ability to pay

### III. Judicial Determination

Finally, while I recognize the source of the majority's conclusion that the ability to pay determination can be made administratively or judicially,[11] I think it should be made solely in a judicial forum. The issues that need to be examined, including the necessity of the expenses in the first instance,[12] demand appropriate consideration of all relevant factors—considerations that warrant both judicial expertise and experience. Moreover, since a judicial officer typically makes determinations of an individual's ability to pay for child support and spousal support purposes, it stands to reason that judicial officers should be permitted to apply those same factors to resolve the ability to pay issues pertaining to this particular type of support.[13] *See* W.Va.Code § 48–1–244(3).

Based on the foregoing, I respectfully concur, in part, and dissent, in part.

I am authorized to state that Justice MAYNARD joins in this concurring and dissenting opinion.

---

determination, rather than utilizing a more open-ended present ability to pay inquiry, may contribute to or encourage the "hiding" of assets or dilatory behavior with regard to procuring the means to pay for such costs.

**11.** *See supra* note 1.

**12.** *See* W.Va.Code § 48–1–244(3).

**13.** The fact that DHHR argued that it had no list of factors for making an ability to pay determination further supports requiring such hearing to be conducted by a judicial officer.